1

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

2

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)

3

1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

4

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

5

E-Mail:  scott@bursor.com
          ltfisher@bursor.com

6

          apersinger@bursor.com

7

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (admitted *pro hac vice*)

8

Joshua Levin-Epstein (admitted *pro hac vice*)
15 Morris Lane

9

Great Neck, NY  11024
Telephone:  (347) 635-4160

10

Facsimile:   (516) 234-7800
E-Mail:  spencer@spencersheehan.com

11

          josh@spencersheehan.com

12

*Attorneys for Plaintiffs*

13

14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

15

16

17

SAMUEL F. ALAMILLA and COLLEEN
KING, individually and on behalf of all others
similarly situated,

18

19

                    Plaintiffs,

20

          v.

21

HAIN CELESTIAL GROUP, INC., ZSBPW
LLC, and BLUEPRINT WHOLESALE LLC,

22

                    Defendants.

23

Case No. 13-CV-05595-YGR

**<u>JURY TRIAL DEMANDED</u>**

**FIRST AMENDED CLASS ACTION
COMPLAINT**

Hon. Yvonne Gonzalez Rogers

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 13-cv-05595 YGR

Plaintiffs Samuel Alamilla ("Alamilla") and Colleen King ("King") (collectively, "Plaintiffs"), bring this action on behalf of themselves and all others similarly situated against the Hain Celestial Group, Inc. ("Hain Celestial"), BluePrint Wholesale LLC ("BluePrint"), and ZSBPW LLC (collectively, "Defendants").  Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit related to Defendants' labeling and marketing campaign that portrays their fruit and vegetable juice products, BluePrintJuice[1] and BluePrintCleanse (the "Juice Products"), as "100% Raw," "Raw And Organic," and/or "Unpasteurized."  However, Defendants' Juice Products misleadingly labeled as "100% Raw," "Raw And Organic," and/or "Unpasteurized" because they undergo a treatment process known as High Pressure Processing (also known as High Pressure Pasteurization or High Pressure Pascalization) ("HPP"), which neutralizes the vitamins, nutrients, live enzymes, nutritional value, and health benefits that reasonable consumers expect raw, uncooked, and unpasteurized juices to contain.  Defendants misrepresent their Juice Products as "100% Raw," "Raw And Organic," and/or "Unpasteurized"[2] in an effort to appeal to health-conscious, raw-juice-drinking consumers who value the perceived health benefits unpasteurized and raw juices offer over juices treated with conventional pasteurization.  By doing so, they are able to charge a significant price premium – roughly double the price of similarly sized, but properly labeled, HPP-treated juice products.

2.      Raw, uncooked, and unpasteurized juices are a specific category of fruit and vegetable juices that are extracted in a manner designed to retain as many vitamins, nutrients, and live enzymes as possible, thereby offering additional nutritional value and health benefits compared to cooked or pasteurized juices.  Because raw juices are unpasteurized and untreated,

---

[1]      Defendants currently offer six BluePrint Juices: (i) Gold (pineapple, apple, mint); (ii) Green (kale, apple, ginger, romaine, spinach, cucumber, celery, parsley, lemon); (iii) Red (apple, carrot, beet, lemon, ginger); (iv) Yellow (lemon, water, cayenne, agave); (v) Yellow 2 (lime, ginger, lemon, agave); and (vi) White (cashew, water, vanilla, cinnamon, agave).

[2]      Unlike the other Juice Products, the "White Juice" is not represented as "Unpasteurized." The bottle does, however, represent that it is "100% Raw" and "Raw And Organic."

1    they must be consumed within days of their production.  This short lifespan, in conjunction with

2    the premium ingredients, makes raw, uncooked, and unpasteurized juices quite expensive.

3    Nonetheless, more and more consumers specifically seek out and pay the premium for raw,

4    uncooked, and unpasteurized juices because of the vitamins, nutrients, live enzymes, nutritional

5    value, and health benefits they offer over juices that are cooked or pasteurized.

6        3.    Defendants label and advertise the Juice Products as (a) "100% Raw," (b) "Raw

7    And Organic," and/or (c) "Unpasteurized."  Moreover, the labeling, marketing, and advertising

8    represents that the Juice Products are "Never Heated," and expressly states that "BluePrint uses

9    pressure instead of heat to keep our beverages fresh, raw and safe.  We don't cook juice!"  Finally,

10   the label contains a "Manifreshto®" which lays out four "simple rules [Defendants] . . . live by,"

11   one of which is "Juice should never be cooked.  Cooking juice kills vitamins and live enzymes.

12   Even 'flash' pasteurized means cooked." (hereafter, together with the representations discussed

13   above, the "Express Warranties" or the "Misrepresentations").

14       4.    Each of Defendants' Misrepresentations is  misleading.  The Juice Products do not

15   provide the same nutritional value or health benefits typically associated with juices that are

16   uncooked, "100% Raw," "Raw And Organic," and/or "Unpasteurized."  Indeed, the effects of HPP

17   on the Juice Products are similar to those of cooking and pasteurization, namely the destruction of

18   vitamins, nutrients, live enzymes, nutritional value, and health benefits found in unpasteurized and

19   uncooked juices.  As a result of Defendants' use of HPP, their Juice Products are nothing more

20   than run-of-the-mill, pasteurized or cooked juices that fail to provide the same vitamins, nutrients,

21   live enzymes, nutritional value, and health benefits that raw, uncooked, and unpasteurized juices

22   provide.  The result are Juice Products that purport to be "100% Raw," "Raw And Organic," and/or

23   "Unpasteurized," yet lack the characteristics and qualities traditionally associated with such

24   products.

25       5.    Due in part to their false belief that Defendants' Juice Products contained the same

26   the vitamins, nutrients, live enzymes, nutritional value, and health benefits as "100% Raw," "Raw

27   And Organic," and/or "Unpasteurized" juices, consumers were misled into paying a premium of $5

28   to $7 more per bottle for Defendants' Juice Products over properly-labeled HPP-treated juices.

FIRST AMENDED CLASS ACTION COMPLAINT                                              2
CASE NO. 13-cv-05595 YGR

6.      Defendants would not be able to charge a premium for their Juice Products without their misleading representations about the nature and characteristics of their products.

7.      Plaintiffs seeks relief in this action individually, and on behalf of two nationwide classes of purchasers of the Juice Products for violation of the Magnuson Moss Warranty Act, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of California's Consumers Legal Remedies Act, violation of California's Unfair Competition Law, and violation of California's False Advertising Law.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Plaintiffs, as well as most members of the proposed class are citizens of states different from the states of at least one of the Defendants.  In 2012, Defendants had revenues of $20,000,000.  According to Hain Celestial's CEO Irwin Simon, revenues are expected to grow to $50,000,000 in 2013.[3]

10.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California, such that Defendants have significant, continuous, and pervasive contacts with the State of California.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged labeling and marketing practices have been disseminated and committed in this District and because Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

12.     Plaintiff Samuel Francisco Alamilla is a health-conscious consumer who is a citizen of California, residing in Santa Rosa, California.  During the class period, Plaintiff Alamilla

---

[3]      *See* http://www.forbes.com/sites/clareoconnor/2013/07/24/juiced-up-inside-3-5-billion-organic-giant-hain-celestial-whole-foods-biggest-supplier/.

purchased a 16-ounce bottle of Defendants' Juice Product for approximately $9.99 per bottle from a store in Sonoma County for his personal consumption. Specifically, on November 15, 2013, Plaintiff Alamilla purchased "Red Juice" for $9.99. Prior to his purchase of the Juice Product, Mr. Alamilla reviewed the product's website, packaging, and labeling. The container he purchased represented that Defendants' Juice Products were "100% Raw" and "Raw And Organic." The container also included a "Manifreshto," which provides "Juice should never be cooked. Cooking juice kills vitamins and live enzymes. Even 'flash' pasteurized means cooked." Plaintiff Alamilla saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Juice Product he purchased was "100% Raw" and "Raw And Organic" in that it contained the same vitamins, nutrients, live enzymes, nutritional value, and health benefits that are otherwise destroyed in the course of "cooking" juice. He relied on these representations and warranties in deciding to purchase the Juice Product at a premium price. Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Juice Product had he known that the Juice Product was neither "100% Raw" nor "Raw And Organic" in that it did not contain the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are destroyed by cooking juice. In reliance on these representations and warranties, he paid a tangible increased cost for the Juice Product, which was worth less than represented because the Juice Product was, in fact, equivalent to a cooked juice. He also understood that in making the sale, his grocery store was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants. He further understood that the purchase involved a direct transaction between himself and Defendants, because the purchase came with Defendants' representations and warranties that the Juice Product contained the same vitamins, nutrients, live enzymes, nutritional value, and health benefits as juices that are uncooked, "100% Raw," and "Raw And Organic."

13.     Plaintiff Colleen King is a health-conscious consumer who is a citizen of California, residing in Los Angeles, California. During the class period, Plaintiff King purchased a 16-ounce bottle of Defendants' Juice Product for approximately $9.99 per bottle from a store in Los Angeles County for her personal consumption. Specifically, on April 16, 2013, Plaintiff King purchased

1    "Gold Juice" for $9.99.  Prior to her purchase of the Juice Product, Ms. King reviewed the

2    product's website, packaging, and labeling.  The container she purchased represented that

3    Defendants' Juice Products were "100% Raw," "Raw And Organic," and "Unpasteurized."  The

4    container also included a "Manifreshto," which provides "Juice should never be cooked.  Cooking

5    juice kills vitamins and live enzymes.  Even 'flash' pasteurized means cooked."  Plaintiff King saw

6    these representations prior to and at the time of purchase, and understood them as representations

7    and warranties that the Juice Product she purchased was "100% Raw," "Raw And Organic," and

8    "Unpasteurized" in that it contained the same vitamins, nutrients, live enzymes, nutritional value,

9    and health benefits that are otherwise destroyed in the course of conventional pasteurization.  She

10   relied on these representations and warranties in deciding to purchase the Juice Product at a

11   premium price.  Accordingly, these representations and warranties were part of the basis of the

12   bargain, in that she would not have purchased the Juice Product had she known that the Juice

13   Product was not, in fact, "100% Raw," "Raw And Organic," or "Unpasteurized" because it did not

14   contain the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are

15   destroyed in pasteurizing juice.  In reliance on these representations and warranties, she paid a

16   tangible increased cost for the Juice Product, which was worth less than represented because the

17   Juice Product was, in fact, equivalent to pasteurized or cooked juice.  She also understood that in

18   making the sale, her grocery store was acting with the knowledge and approval of the Defendants

19   and/or as the agent of the Defendants.  She further understood that the purchase involved a direct

20   transaction between herself and Defendants, because the purchase came with Defendants'

21   representations and warranties that the Juice Product contained the vitamins, nutrients, live

22   enzymes, nutritional value, and health benefits not found in pasteurized or cooked juice.

23          14.     Defendant Hain Celestial Group, Inc. is a Delaware corporation with its global

24   headquarters at 1111 Marcus Avenue, Lake Success, New York 11042.  Hain Celestial is a publicly

25   traded company currently registered on the NASDAQ Global Select Market.  It is a leading natural

26   and organic food and personal care products company that operates in North America and Europe.

27   Hain Celestial's net sales in 2012 were $1.378 billion.  In 2012, Hain Celestial acquired BluePrint

28   and controls it as a wholly-owned subsidiary.

15.     Defendant BluePrintWholesale LLC is a New York limited liability company headquartered in Long Island City, New York 11101.

16.     Defendant ZSBPW LLC is a New York limited liability company headquartered at 135 W. 29th Street, New York, New York 10001.

17.     Defendants market and sell their Juice Products widely throughout California, New York, and other states.  Defendants have manufactured, marketed, and sold the Juice Products using the deceptive and misleading claims described herein since at least 2012.  Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.  The Raw Food Movement

18.     Raw foodism is a relatively new diet movement known for its health benefits.  The movement focuses on the consumption of foods with living enzymes, probiotics, and nutrients in order to help humans fully digest food without relying on their own digestive enzymes.

19.     As the name suggests, consumption of "raw" foods is vital to the raw food movement.  "Raw" foods are usually organic foods that are unprocessed, uncooked, and not decontaminated in order to maintain the presence of enzymes, probiotics, and other qualities in their original state.  Raw foods are favored over otherwise denatured or processed food for two reasons.  First, the treatment process destroys or alters many of the enzymes, nutrients, and vitamins found in food.  Second, raw foodists believe that foods without a significant amount of active enzymes take longer to digest and thus clog up the digestive system and arteries with partially digested fats, proteins, and carbohydrates.

20.     "Raw" foods and juices cannot be pasteurized.  This is because pasteurization preserves and sterilizes foods and juices by substantially reducing the live, active enzymes that are the essence of raw foods.  Accordingly, truly "100% Raw," "Raw And Organic," and /or "Unpasteurized" products typically have a shelf life of five days or less.  As a result of their short

1    shelf life and production costs, to be commercially viable, these juices sell for a substantial

2    premium compared to the average cooked or pasteurized juices.

3           21.    To capture part of the ever-growing market for raw juice products, Defendants

4    prominently label and market the Juice Products as "100% Raw," "Raw And Organic," and/or

5    "Unpasteurized."  In fact, every side of the Defendants' labeling and packaging includes the words

6    "raw" or "unpasteurized" or "cooked" to misrepresent to consumers that the Juice Products retain

7    the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are lost in cooked

8    or pasteurized juices.  Despite these promises to consumers, Defendants treat all of their Juice

9    Products with HPP, a process that they *know* has an "impact … on the structure of the components

10   responsible for nutrition and flavor."[4]  In doing so, they are able to charge a substantial amount –

11   upwards of $10 for 16 ounces – for their Juice Products.[5]  Surprisingly, Defendants' Juice

12   Products, unlike other raw, unpasteurized, or uncooked juices on the market, have a considerably

13   longer shelf life of about 30 days.  This remarkable (for the industry) shelf life is because

14   Defendants use HPP to treat their Juice Products.  Defendants have admittedly used HPP to extend

15   the shelf-life of their Juice Products since at least March 2012.

16   **B.  The Effect of HPP**

17          22.    This artificial extension of the lifespan of the Juice Products violates the

18   fundamental principles underlying the raw food movement, consumers' expectations, and industry

19   standards.  Without such manipulation, Defendants' Juice Products would be, like all truly raw,

20   uncooked, or unpasteurized juices, extremely vulnerable to spoliation and degradation.  However,

21   such stability and longevity comes at a price.

22          23.    A direct and unavoidable result of the use of HPP is the destruction of the vitamins,

23   nutrients, live enzymes, nutritional value, and health benefits that reasonable consumer would

24   _____

25   [4]       *See* www.blueprintjuice.com/hpp (last visited March 4, 2014).

26   [5]       "New technologies such as HP[P] can allow producers to create new markets not
     possible with old technologies and such benefits are only now being explored. Consumers
     are generally willing to pay more for greater perceived value." Eammon Hogan, Alan L.
27   Kelly, & Da-Wen Sun, High Pressure Processing of Foods: An Overview in Effect of High
     Pressure of Food Quality, 25 (2005).

28

expect raw, uncooked, or unpasteurized juices to contain.  As such, the Juice Products being sold to consumers have less of the vitamins, nutrients, live enzymes, nutritional value, and health benefits found in otherwise non-HPP-treated, unpasteurized, uncooked, or raw juices.

24.     HPP is an alternative to traditional, thermal pasteurization of food that decontaminates and preserves food products through the use of high pressure.  But like pasteurization and cooking, HPP also has a detrimental effect on food and juice products.  Specifically, the HPP process "may inactivate enzymes and or alter the physical properties of the food material (e.g., denature structural proteins or densify texture)."[6]  Furthermore, HPP "may also cause greater levels of protein denaturation and other potential detrimental changes in food quality that could affect the appearance of and texture of food, compared to the unprocessed product."[7]  As such, it is undeniable that HPP-treated foods do not contain the vitamins, nutrients, live enzymes, nutritional value, and health benefits as raw, uncooked, or unpasteurized juices.

**C. Defendants' Misleading Packaging and Labeling – BluePrintJuice**

25.     Defendants represent their BluePrintJuice Products as "Raw And Organic" and "Unpasteurized Juice Beverages" both on the front of each label and on their website:[8]

---

[6]     Margaret F. Paterson, Mark Linton & Christopher J. Donna, Introduction to High Pressure Processing of Food in High Pressure Processing of Food, 3 (2007).

[7]     Eammon Hogan, Alan L. Kelly, & Da-Wen Sun, High Pressure Processing of Foods: An Overview in Effect of High Pressure of Food Quality, 16 (2005).

[8]     See www.blueprintjuice.com (last visited March 4, 2014).

FIRST AMENDED CLASS ACTION COMPLAINT                                                    8
CASE NO. 13-cv-05595 YGR

1
2
3
4
5
6
7
8
9
10
11
12



13    This is misleading.  By being labeled and marketed as "Unpasteurized," Defendants convey to

14    consumers that the Juice Products the vitamins, nutrients, live enzymes, nutritional value, and

15    health benefits that pasteurization eliminates.  This is misleading because Defendants treat their

16    BluePrintJuices with HPP, which as discussed above, leads to an end product that is nutritionally

17    equivalent to a pasteurized juice.  Stated otherwise, the vitamins, nutrients, live enzymes,

18    nutritional value, and health benefits that consumers are led to believe the Juice Products contain as

19    result of the "Unpasteurized" label are in fact lacking because HPP, in the course of sterilizing and

20    extending the shelf life of the Juice Products, also causes the destruction of these exact

21    characteristics and properties.

22         26.    Defendants also use the phrases "100% Raw" and "Raw And Organic" in the

23    labeling and packaging of the Juice Products:

24
25
26
27
28

1

2

3

4

5

6

7

8

9

10



11 The use of the term "Raw" is misleading.  Indeed, Defendants use the term "Raw" for the same

12 purpose and in the same manner as they do "Unpasteurized" – to convey that the Juice Products

13 retain the particular vitamins, nutrients, live enzymes, nutritional value, and health benefits that the

14 traditional "cooking" process destroys.  However, because the exact opposite is true – that is,

15 treating juices with HPP has the same effects as cooking juice, namely the destruction of vitamins,

16 nutrients, and health benefits – the use of the term "Raw" in connection with the Juice Products is

17 likewise misleading.

18        27.      Additionally, Defendants include their "Manifreshto®" on another side of the bottle.

19 In particular, Defendants attest that they live by the rule that "Juice should never be cooked.

20 Cooking juice kills vitamins and live enzymes.  Even 'flash' pasteurized means cooked:"

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13



14

When looked at in context of the bottle, this too is misleading and deceptive.  Indeed, this bolsters

15

Defendants' pitch that the Juice Products have the same vitamins, nutrients, live enzymes,

16

nutritional value, and health benefits as unpasteurized juices because it implies that Defendants

17

avoid methods that "kill[] vitamins and live enzymes" found in raw or uncooked juices.  Moreover,

18

the Manifreshto eliminates any possibility that a reasonable consumer would interpret

19

"unpasteurized" or "raw" to only mean "free of heat treatment" because Defendants "swear to give

20

you the juice, the whole juice and nothing but the juice" and purport to live by the rule that "Juices

21

should never be cooked [because] [c]ooking kills vitamins and live enzymes."   However, in

22

context of the bottle as a whole, this is misleading because Defendants omit the fact that HPP, like

23

cooking juice, also "kills vitamins and live enzymes."

24

25

26

27

28

1      28.      Finally, Defendants state on the side of the bottle that the Juice Products are "Never

2    Heated" and then go on to explain that "BluePrint uses pressure instead of heat to keep our

3    beverages fresh, raw and safe. We don't cook juice!":



23    Despite noting that BluePrint "uses pressure" to treat its juices, this representation is insufficient to

24    remedy the otherwise misleading and deceptive nature of the labels.  In fact, this representation

25    itself is also deceptive and misleading because it fails to disclose that the use of HPP results in the

26    destruction of valuable and desirable vitamins, nutrients, live enzymes, nutritional value, and health

27    benefits a reasonable consumer expects to find in a juice marketed as "100% Raw," "Raw And

28    Organic," and/or "Unpasteurized."  Accordingly, it provides no basis from which a reasonable

consumer would conclude that BluePrintJuice Products actually provide less vitamins, nutrients, live enzymes, nutritional value, and health benefits than juices that are truly uncooked, "100% Raw," "Raw And Organic," and/or "Unpasteurized."

29.     Each of Defendants' BluePrintJuice products contain this labeling and advertising.[9] Defendants label and market their "Gold Juice" as follows:




30.     Defendants label and market their "Red Juice" as follows:

---

[9]     The images of the "Gold Juice," "Red Juice," "Green Juice," "Yellow Juice," and "Yellow Juice" were taken from Defendants' website, www.blueprintjuice.com (last visited March 4, 2014).

1
2
3
4
5
6
7
8
9
10
11
12
13




14    31.    Defendants label and market their "Green Juice" as follows:

15
16
17
18
19
20
21
22
23
24
25
26
27
28





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32.     Defendants label and market their "Yellow Juice" as follows:

 

33.     Defendants label and market their "Yellow 2 Juice" as follows:

 

1    34.    Defendants also market and advertise their BluePrintJuice Products as akin to their

2   BluePrintCleanse Products by proclaiming, "BluePrintCleanse's signature cold pressed juices are

3   newly single and ready to be picked up at select retail locations.  Each 16 oz serving is 100% raw

4   and organic:"



1

### D. Defendants' Misleading Packaging and Labeling – BluePrintCleanse

2       35.     At its core, BluePrintCleanse is a daily cleanse program that replaces a consumer's

3  meals with six juices per day.  Defendants currently offer three levels of its cleanse program,

4  consisting of different combinations of its juices:  Renovation Cleanse, Foundation Cleanse, and

5  Excavation Cleanse (collectively, the "Cleanses").

6       36.     Defendants predominately market, advertise, and sell their Cleanses to consumers

7  directly through their website, www.blueprintcleanse.com.  Thus, consumers rely on the

8  representations made on the website in making their purchase decision rather than the

9  representations contained on the products' labels.  Stated otherwise, BluePrintCleanse's website is

10 the functional equivalent of a label in that consumers inherently rely on the representations

11 contained thereon in making their decision to purchase Defendants' Cleanses.

12      37.     In addition to online purchases, consumers can also purchase BluePrintCleanse at

13 some of the retail locations where BluePrintJuice is sold, for example, Whole Foods:



14

15

16

17

18

19

20

21

22

23

24      38.     Despite the different marketing campaign, the Cleanses are comprised of the very

25 same juices sold at retail locations under the BluePrintJuice name.

26

27

28

1        39.      For example, the "Renovation Cleanse" is comprised of "Green Juice," "Spicy

2   Lemonade,"  "P.A.M.," "Cashew Milk," and "C.A.B.:"



Despite the different names, these are, in fact, the same as BluePrintJuice's "Green Juice," "Yellow 2 Juice" (Spicy Lemonade), "Gold Juice" (Pineapple Apple Mint), and "Red Juice" (Carrot Apple Banana) juice products.

        40.      Likewise, the "Foundation Cleanse" is comprised of "Green Juice," "Spicy

Lemonade," "P.A.M.," and "Cashew Milk:"



1    Again, despite the different names, the cleanse juices are, in fact, the same as BluePrintJuice's

2    "Green Juice," "Yellow 2 Juice" (Spicy Lemonade), and "Gold Juice" (Pineapple Apple Mint)

3    juice products.

4         41.    Finally, the "Excavation Cleanse" is comprised of "Green Juice," "Spice

5    Lemonade," and "Cashew Milk:"

6

7

8

9                               

10

11

12

13

14

15

16

17   As with the other cleanses, these cleanse juices are, in fact, the same BluePrintJuice's "Green

18   Juice" and "Yellow 2 Juice" (Spicy Lemonade).

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42.    Indeed, Defendants' own website for BluePrint*Juice* confirms that the Cleanses are comprised of BluePrintJuices, stating, "BluePrintCleanse's signature cold pressed juices are newly single and ready to be picked up at select retail locations.  Each 16 oz serving is 100% raw and organic:"



Moreover, Defendants' own social media campaign confirms that the only difference is "that our retail juice, BluePrintJuice, is not numbered like the BluePrintCleanse juice you'd receive if you ordered directly from us…:"



**BluePrintCleanse** Shannon Benner, we are not cooking the juice. Daniella Genovese, there are absolutely no negatives to ordering juice from Fresh Direct. If you plan to use the juice for a cleanse, the only caveat is that our retail juice, BluePrintJuice, is not numbered like the BluePrintCleanse juice you'd receive if you ordered directly from us, and you won't get instructional emails. BluePrintJuice was designed to be consumed on it's own, in addition to a healthy diet or to supplement a cleanse, but it is also perfectly acceptable to use it to build a cleanse on your own.
January 8, 2012 at 3:11pm · 👍 2

43.     Despite the fact that BluePrintCleanse and BluePrintJuice are the *same* juices, Defendants misleadingly represent on their website that juices used in the Cleanses are "100% raw & unpasteurized:"



This is misleading because Defendants treat their Cleanses with HPP, which as discussed above, leads to an end product that is nutritionally equivalent to a pasteurized juice.  Stated otherwise, the vitamins, nutrients, live enzymes, nutritional value, and health benefits that consumers are led to believe the Cleanses contain as result of the "Unpasteurized" label in fact do not exist because HPP, in the course of sterilizing and extending the shelf life of the Cleanses, also causes the destruction of desirable enzymes, probiotics, nutrients, and vitamins contained in the juices.

44.     As with BluePrintJuice, Defendants purport to adhere to a similar "Manifreshto" for BluePrintCleanse.  In particular, Defendants proclaim "Juice should never be cooked. Pasteurization heats juice and kills vitamins, minerals and live enzymes.  Even 'flash' pasteurized means cooked."  Defendants also attest that their "juice has a three-day shelf life because its 100% raw, unprocessed, and never frozen.  That's also why it costs more, tastes better and is better for you:"

## The BPC Manifreshto™

The core values we live and juice by:

## Work Hard. Play Hard. Cleanse. Repeat.™

We live and promote a balanced, healthful, and sustainable lifestyle. Feeding your body with whole foods and natural produce is the best long-term strategy for maintaining good health.

## Quality

The freshest fruits and vegetables make the best juice.

Juice should never be cooked. Pasteurization heats juice and kills vitamins, minerals and live enzymes. Even "flash" pasteurized means cooked.

Good juice dies young. Our juice has a three-day shelf life because it's 100% raw, unprocessed, and never frozen. That's also why it costs more, tastes better and is better for you.

Don't settle for juice that doesn't settle. Only additives can prevent the natural settling process that occurs in the bottle, and who wants to drink additives? Just give it a little shake shake and enjoy.

This underscores Defendants' misrepresentations that the Juice Products are 100% raw and unpasteurized because it implies that Defendants avoid methods that destroy the nutritional benefits of raw juices.  However, like BluePrintJuice, the Cleanse juices are subjected to HPP.  Since Defendants omit the fact that HPP, like cooking juice, also "kills vitamins and live enzymes," the representation is false and misleading when viewed in the context of the bottle as a whole.

45.     Despite the inherent differences in labels, all BluePrintCleanse packaging and labeling bears the same "100% Raw" and "Raw And Organic" representations that are found on the BluePrintJuice Products:




However, as with BluePrintJuice, this labeling is misleading because Defendants use the term "Raw" in the same manner they use "Unpasteurized" – to convey that BluePrintCleanse preserves vitamins, nutrients, live enzymes, and health benefits that are otherwise destroyed by the "cooking" process.  But just the opposite is true.  As discussed below, the Cleanses, just like BluePrintJuice Products, are treated with HPP.  As a result of being treated with HPP, the juices used in the Cleanses do not contain the vitamins, nutrients, live enzymes, and health benefits destroyed by the cooking process.

46.     Despite representing the Cleanse juices as "100% raw & unpasteurized" on their website, hidden away from the actual descriptions of the Cleanses is a separate webpage concerning Defendants' use of HPP.  Specifically, Defendants state that "'Heat' or 'flash' pasteurization, or other silly adjectives such as 'lovingly' or 'gently' pasteurized, results in juice that is essentially cooked, which kills vitamins, minerals, and live enzymes," and then go on to proclaim "We do not now, nor ever will we ever, apply heat to our cold pressed juice.  We don't cook juice:"

 

Questions?

Health

Environment

Delivery

During the Cleanse

Ordering

Details

High Pressure Pascalization

## High Pressure Pascalization
Q. What is HPP and how does it work?

A: High Pressure Pascalization uses high pressure instead of heat to inhibit microflora growth in fresh food and therefore naturally extend its shelf life. Unlike pasteurization, pascalization is an external process; the raw product itself is never touched. After the products are in their final packaging, our pressurizing method uses only evenly distributed pressure of cool water (44°F) to short circuit any potential harmful invaders, such as Listeria, E. coli, Salmonella, lactic acid bacteria, yeast and mold. Pressure drastically reduces overall microbiological contaminant flora and pathogens, eliminating the possibility of recontamination. Because of the chilled temperature at which the juice is treated, plus the minimal impact that pressure has on the structure of the components responsible for nutrition and flavor, the juice remains raw and the taste remains the same.

"Heat" or "flash" pasteurization, or other silly adjectives such as "lovingly" or "gently" pasteurized, results in juice that is essentially cooked, which kills vitamins, minerals, and live enzymes. We do not now, nor ever will we ever, apply heat to our cold pressed juice. We don't cook juice.

Q: Does pressure destroy vitamins, enzymes or nutrients?

A: Because there is so much inconclusive information regarding enzyme activity floating around, we felt the only way to know for certain was to have our juice tested directly. We tested for enzymatic activity in our juice both before and after HPP was applied—the lab result came back: "NO DIFFERENCE." There is and will continue to be conflicting research on the broader topic of enzyme activity in food after HPP is applied. There are many variables involved, such as the level of pressure applied, the length of time the juice is pressurized, and more importantly, the many different types of enzymes that exist. For our purposes, we identified the specific ones we feel are most critical to our juice, and the test results came back positive for activity.

Regardless of when purchased or received, we recommend drinking the juice as quickly as possible to maximize nutritional benefits...because the reality is that all enzymes and nutrients slowly deteriorate. Drink soon.

This is misleading.  Despite revealing that the Cleanses are treated with HPP, this representation does not remedy the otherwise misleading and deceptive nature of the website because Defendants hide the truth of the effects of HPP.  Indeed, in an apparent attempt to reinforce its marketing, Defendants represent that subjecting the juices to HPP results in "no difference" to the "specific [enzymes they] feel are most critical our juice."  However, consumers do not purchase the juices solely for the enzymes *Defendants* feel are important, rather they purchase "100% Raw" and "Unpasteurized" juices for *all* of the valuable and desirable enzymes, nutrients, probiotics, and

vitamins that such juices contain.  Thus, this representation is misleading to the extent that Defendants fail to disclose that HPP results in the destruction of at least some of the enzymes, probiotics, and vitamins a reasonable consumer expects to find in a juice marketed and labeled as "100% Raw," "Raw And Organic," and/or "Unpasteurized," namely all those that are destroyed by the "cooking" pasteurization process.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs Alamilla and King seek to represent a class defined as all persons in the United States who purchased the Juice Products represented as being "100% Raw" and "Raw And Organic" for personal or household use, excluding those who purchased the Juice Products for resale (hereafter, the "Raw Class").

48.     Plaintiffs Alamilla and King also seek to represent a subclass defined as all members of the Raw Class who purchased Juice Products represented as being "100% Raw" and "Raw and Organic" within the State of California (the "Raw California Subclass").

49.     Plaintiff King also seeks to represent a class defined as all persons in the United States who purchased the Juice Products represented as being "100% Raw," "Raw And Organic," and "Unpasteurized" for personal or household use, excluding those who purchased the Juice Products for resale (hereafter, the "Unpastuerized Class," and, together with the Raw Class, the "Classes").

50.     Plaintiff King also seeks to represent a subclass defined as all members of the Unpasteurized Class who purchased Juice Products within the State of California (the "Unpasteurized California Subclass," and, together with the Raw California Subclass, the "California Subclasses").

51.     Members of the Classes and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes and the California Subclasses number in the millions.  The precise number of members of the Classes and Subclasses and their identities are unknown to Plaintiffs at this time but may be determined through discovery of Defendants' records.  Class members may be notified of the pendency of this action by mail,

1  email, and/or publication through the distribution records of Defendants and third party retailers

2  and vendors.

3       52.    Common questions of law and fact exist as to all Class members and predominate

4  over questions affecting only individual Class members.  These common legal and factual

5  questions include, but are not limited to:

6          a.   Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C.

7               §§ 2301, *et seq.*;

8          b.  Whether Defendants breached an express warranty made to Plaintiffs and the

9               Classes;

10         c.  Whether Defendants breached an implied warranty made to Plaintiffs and the

11              Classes;

12         d.  Whether Defendants were unjustly enriched by their conduct;

13         e.  Whether Defendants advertised or marketed the Juice Products in a way that was

14              false or misleading;

15         f.  Whether Defendants' conduct was false, misleading, or reasonably likely to deceive

16              ordinary consumers;

17         g.  Whether Class members have been injured by Defendants' conduct;

18         h.  Whether Class members suffered an ascertainable loss as a result of Defendants'

19              Misrepresentations; and

20         i.  Whether Class members are entitled to damages, restitution, injunctive relief, and/or

21              monetary relief and, if so, the amount and nature of such relief.

22      53.    Plaintiffs Alamilla and King, and members of the Raw California Subclass and the

23 Unpasteurized California Subclass, respectively, have questions of fact and common law to them

24 that predominate over any questions affecting only individual members of the Subclasses.  These

25 common questions include:

26         a.  Whether Defendants violated California Civil Code §§ 1750, *et seq.*;

27         b.  Whether Defendants violated California Business & Professions Code §§ 17200, *et*

28              *seq.*;

c.   Whether Defendants violated California Business & Professions Code § 17500; and

d.   The appropriate measure of damages to be received by Plaintiffs and the California Subclasses.

54.   The claims of the named Plaintiffs are typical of the claims of the Class in that Plaintiffs (a) were exposed to Defendants' false and misleading packaging, marketing, and promotion of the Juice Products; (b) relied on Defendants' Misrepresentations; and (c) suffered a loss as a result of their purchases.  Each Class member was subjected to the same conduct, was harmed in the same way, and has claims for relief under the same legal theories.

55.   Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

56.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation Of The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*

57.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

1      58.     Plaintiffs bring this claim individually and on behalf of the members of the Classes

2   and Subclasses against all Defendants.

3      59.     The Juice Products are consumer products as defined in 15 U.S.C. § 2301(1).

4      60.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

5      61.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

6      62.     In connection with the sale of the Juice Products, Defendants issued written

7   warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the Juice Products

8   were: (i) "100% Raw," (ii) "Unpasteurized," and (iii) "Raw and Organic."  When viewed in

9   context with the Manifreshto – in which Defendants "swear" to "live by" the rule that "Juice

10   should never be cooked [because] [c]ooking kills vitamins and live enzymes" –  a reasonable

11   consumer would expect the Juice Products to have the vitamins, nutrients, live enzymes, nutritional

12   value, and health benefits found in uncooked, unpasteurized, or raw juices.

13      63.     In fact, the Juice Products do not conform to the Express Warranties because the

14   Juice Products are subjected to HPP, thus rendering them akin to cooked or pasteurized juices in

15   that the same vitamins, nutrients, live enzymes, nutritional value, and health benefits are destroyed

16   in contradiction to the representations and warranties on the labeling, packaging, and marketing.

17      64.     By reason of Defendants' breach of these Express Warranties, Defendants violated

18   the statutory rights due to Plaintiffs and Class members pursuant to the MMWA, thereby damaging

19   Plaintiffs and Class members. 15 U.S.C. §§ 2301, *et seq*.

20      65.     Plaintiffs and members of the Classes were injured as a direct and proximate result

21   of Defendants' breach because (a) they would not have purchased the Juice Products if they had

22   known that the products did not contain the vitamins, nutrients, live enzymes, nutritional value, and

23   health benefits found in uncooked, "100% Raw," or "Unpasteurized" juices; (b) they paid a price

24   premium for the Juice Products based on Defendants' Express Warranties; and (c) the Juice

25   Products did not have the characteristics, uses, or benefits as promised, namely that the Juice

26   Products contained the vitamins, nutrients, live enzymes, nutritional value, and health benefits that

27   are destroyed by pasteurization or cooking

28

66.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Classes are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranties, which either constitute the full purchase price of the Juice Products or the difference in value between the Juice Products as warranted and the Juice Products as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Classes are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Classes in connection with the commencement and prosecution of this action.

## COUNT II
### Breach Of Express Warranty

67.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.     Plaintiffs bring this claim individually and on behalf of the members of the Classes and Subclasses against all Defendants.

69.     In connection with the sale of the Juice Products, Defendants issued written Express Warranties.  Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers expressly warranted that the Juice Products were fit for their intended purpose as unpasteurized, raw juices by making the Express Warranties – that is, that the Juice Products contained the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are eliminated by pasteurization or cooking – to Plaintiffs and the Classes.

70.     Defendants' Express Warranties, their affirmations of fact and promises made to Plaintiffs and the Classes regarding the Juice Products, and their descriptions of the Juice Products contained in advertisement and on product labeling and product packaging became part of the basis of the bargain between Defendants and Plaintiffs and the Classes, thereby creating express warranties that the Juice Products would conform to those affirmations of fact, representations, promises, and descriptions.

71.     The Juice Products do not, in fact, contain the vitamins, nutrients, live enzymes, nutritional value, and health benefits that juices labeled (a) "100% Raw," (b) "Raw And Organic,"

1    or (c) "Unpasteurized" contain because the Juice Products undergo HPP – a process which destroys

2    the vitamins, nutrients, live enzymes, nutritional value, and health benefits found in uncooked or

3    unpasteurized juices.

4         72.      Plaintiffs and members of the Classes were injured as a direct and proximate result

5    of Defendants' breach because (a) they would not have purchased the Juice Products if they had

6    known that the products did not in fact contain the vitamins, nutrients, live enzymes, nutritional

7    value, and health benefits found in uncooked or unpasteurized juices; (b) they paid a price premium

8    for the Juice Products based on Defendants' Express Warranties; and (c) the Juice Products did not

9    have the characteristics, uses, or benefits as promised, namely they lacked the vitamins, nutrients,

10   live enzymes, nutritional value, and health benefits that are destroyed by pasteurization or cooking.

11   As a result, Plaintiffs and members of the Classes have been damaged either in the full amount of

12   the purchase prices of the Juice Products or in the difference in value between the Juice Products as

13   warranted and the Juice Products as actually sold.

14                                    **COUNT III**
15                **Breach Of The Implied Warranty Of Merchantability**

          73.      Plaintiffs repeat the allegations contained in the paragraphs above as if fully set
16
     forth herein.
17
          74.      Plaintiffs bring this claim individually and on behalf of the members of the Classes
18
     and Subclasses against all Defendants.
19
          75.      Defendants are and were at all relevant times "merchants" within the meaning of the
20
21   Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed the

22   Juice Products, which are "goods" within the meaning of the UCC.  Consequently, Defendants

23   impliedly warranted that the Juice Products were merchantable, including that they could pass

24   without objection in the trade under the contract description, that they were fit for the ordinary

25   purposes for which such goods are used, that they were of fair average quality within the

26   description, that they were adequately labeled, and that they would conform to the promises or

27   affirmations of fact made on their container or labels.  However, each of these implied warranties

28

1    was false with respect to the goods of the kind sold to Plaintiffs and members of the Classes and

2    Subclasses.

3         76.    In reliance upon Defendants' skill and judgment and the implied warranties of

4    fitness for the purpose, Plaintiffs and Class members purchased the Juice Products for the purpose

5    of consuming juices that contained the vitamins, nutrients, live enzymes, nutritional value, and

6    health benefits that are destroyed by pasteurization or cooking.

7         77.    The Juice Products were not altered by Plaintiffs or members of the Classes.

8         78.    The Juice Products were defective when they left the exclusive control of

9    Defendants.

10        79.    Defendants knew the Juice Products would be purchased and consumed by

11   Plaintiffs and members of the Classes without additional testing for nutritional value.  The Juice

12   Products were unfit for their intended purpose, and Plaintiffs and members of the Classes did not

13   receive the goods as warranted.

14        80.    More specifically, Defendants breached their implied warranty of merchantability to

15   Plaintiffs and the Classes because the Juice Products would not pass without objection in the trade

16   because they were incapable of performing the functions they were intended to perform.  Because

17   the Juice Products were treated with HPP, they lacked the vitamins, nutrients, live enzymes,

18   nutritional value, and health benefits that are found in juices that are uncooked, "100% Raw,"

19   "Raw And Organic, and/or "Unpasteurized."

20        81.    As a direct and proximate cause of Defendants' breach of the implied warranty,

21   Plaintiffs and Class members were injured because (a) they would not have purchased the Juice

22   Products if they had known that the products did not contain the vitamins, nutrients, live enzymes,

23   nutritional value, and health benefits that are destroyed by pasteurization or cooking; (b) they paid

24   a price premium for the Juice Products based on Defendants' Express Warranties; and (c) the Juice

25   Products did not have the characteristics, uses, or benefits as promised, namely they lacked the

26   vitamins, nutrients, live enzymes, nutritional value, and health benefits that are destroyed by

27   pasteurization or cooking.  As a result, Plaintiffs and members of the Classes have been damaged

28

1    either in the full amount of the purchase prices of the Juice Products or in the difference in value

2    between the Juice Products as warranted and the Juice Products as actually sold.

                                      **COUNT IV**
3                    **Unjust Enrichment / Common Law Restitution**

4            82.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set

5    forth herein

6            83.    Plaintiffs bring this claim individually and on behalf of the members of the Classes

7    and Subclasses against all Defendants.

8            84.    Plaintiffs and members of the Classes conferred benefits on Defendants by

9    purchasing the Juice Products.

10           85.    Defendants have been unjustly enriched in retaining the revenues derived from

11   Plaintiffs' and Class members' purchases of the Juice Products.  Retention of those monies under

12   these circumstances is unjust and inequitable because of Defendants' Misrepresentations about the

13   Juice Products – that the products contained the vitamins, nutrients, live enzymes, nutritional value,

14   and health benefits that are destroyed by pasteurization or cooking – which caused injuries to

15   Plaintiffs and members of the Classes because they would not have purchased the Juice Products if

16   the true facts had been known.

17           86.    Because Defendants' retention of the non-gratuitous benefits conferred on them by

18   Plaintiffs and members of the Classes is unjust and inequitable, Defendants must pay restitution to

19   Plaintiffs and members of the Classes for their unjust enrichment, as ordered by the Court.

                                      **COUNT V**
20          **Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
21                    **California Civil Code §§ 1750, *et seq.***

22           87.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

23   forth herein.

24           88.    Plaintiffs bring this claim individually and on behalf of the members of the

25   California Subclasses against all Defendants.

26           89.    In violation of Cal. Civ. Code §§ 1750, *et seq.*, Defendants have engaged in unfair

27   and deceptive acts and practices in the course of transactions with Plaintiffs and the California

28

1    Subclasses.  Such transactions were intended to and did result in the sales of goods to Plaintiffs and

2    members of the California Subclasses.  Plaintiffs and members of the California Subclasses are

3    "consumers" as that term is used in the CLRA because they sought or acquired Defendants' goods

4    or services for personal, family, or household purposes.

5           90.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have

6    sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

7    have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she

8    does not have."  Defendants violated this provision by making the Misrepresentations.

9           91.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

10    particular standard, quality, or grade, or that goods are of a particular style or mode, if they are of

11    another."  Defendants violated this provision by making the Misrepresentations.

12           92.    Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not

13    to sell them as advertised."  Defendants violated this provision by making the Misrepresentations.

14           93.    A reasonable consumer would expect a Juice Product labeled as "100% Raw,"

15    "Raw And Organic," and/or "Unpasteurized" to contain the same vitamins, nutrients, live enzymes,

16    nutritional value, and health benefits that are otherwise destroyed in the course of "cooking" or

17    pasteurization.

18           94.    Plaintiffs and members of the California Subclasses were injured as a direct and

19    proximate result of Defendants' CLRA violations because (a) they would not have purchased the

20    Juice Products if they had known that the products did not contain the vitamins, nutrients, live

21    enzymes, nutritional value, and health benefits that are destroyed by pasteurization or cooking; (b)

22    they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c)

23    the Juice Products did not have the characteristics, uses, or benefits as promised, namely they

24    lacked the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are

25    destroyed by pasteurization or cooking.  As a result, Plaintiffs and members of the California

26    Subclasses have been damaged either in the full amount of the purchase prices of the Juice

27    Products or in the difference in value between the Juice Products as warranted and the Juice

28    Products as actually sold.

95.     Prior to filing this Complaint, notice letters were served on Defendants Hain

Celestial, BluePrintWholeSale LLC, and ZSBPW LLC which complied in all respects with Cal.

Civ. Code § 1782(a).  Plaintiffs, by and through their counsel, sent each Defendant a letter via

certified mail, return receipt requested, advising them that they were in violation of the CLRA and

that they must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of §

1770.  A copy of the letter is attached hereto as Exhibit A.

96.     Wherefore, Plaintiffs seek all remedies available under the CLRA.

**COUNT VI**
**Violation Of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***

97.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set

forth herein.

98.     Plaintiffs bring this claim individually and on behalf of the members of the

California Subclasses against all Defendants.

99.     Defendants are subject to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

Code §§ 1200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and

include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or

misleading advertising . . . ."

100.    In connection with the sale of Defendants' Juice Products, Defendants warranted

that their products contained the vitamins, nutrients, live enzymes, nutritional value, and health

benefits of juices that are uncooked, "100% Raw," "Raw And Organic," and "Unpasteurized."

However, Defendants' Juice Products lack these characteristics of uncooked, raw, and

unpasteurized juices because as they undergo a treatment process known as HPP, which neutralizes

the benefits of the live enzymes, vitamins, and nutrients that would otherwise be retained in an

uncooked or unpasteurized juice.

101.    Defendants' conduct, described herein, violated the "unlawful" prong of the UCL

by violating the MMWA, the CLRA, and the FAL.

102.    Defendants' conduct, described herein, violated the "unfair" prong of the UCL by

violating the policy or spirit of the MMWA, the CLRA, and the FAL.

103.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

104.    Plaintiffs and members of the California Subclasses were injured as a direct and proximate result of Defendants' UCL violations because: (a) they would not have purchased the Juice Products if they had known that the products did not contain the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are destroyed by pasteurization or cooking; (b) they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised, namely they lacked the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are destroyed by pasteurization or cooking.  As a result, Plaintiffs and members of the California Subclasses have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

105.    A reasonable consumer would expect a Juice Product labeled as "100% Raw," "Raw And Organic," and/or "Unpasteurized" to contain the same vitamins, nutrients, live enzymes, nutritional value, and health benefits that are otherwise destroyed in the course of "cooking" or pasteurization.

**COUNT VII**
**Violation Of California's False Advertising Law ("FAL"),**
**Calif. Business & Professions Code §§ 17500,** *et seq.*

106.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

107.    Plaintiffs bring this claim individually and on behalf of the members of the California Subclasses against all Defendants.

108.    California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

109.    Defendants committed acts of false advertising, as defined by § 17500, by making the Misrepresentations described herein.

110.    Defendants knew or should have known, through the exercise of reasonable care, that the Misrepresentations were untrue and misleading.

111.    Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

112.    A reasonable consumer would expect a Juice Product labeled as "100% Raw," "Raw And Organic," and/or "Unpasteurized" to contain the same vitamins, nutrients, live enzymes, nutritional value, and health benefits that are otherwise destroyed in the course of "cooking" or pasteurization.

113.    Plaintiffs and members of the California Subclasses lost money or property as a direct and proximate result of Defendants' FAL violations because: (a) they would not have purchased the Juice Products if they had known that the products did not contain the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are destroyed by pasteurization or cooking; (b) they paid a price premium for the Juice Products based on Defendants' Misrepresentations; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised, namely they lacked the vitamins, nutrients, live enzymes, nutritional value, and health benefits that are destroyed by pasteurization or cooking.  As a result, the Plaintiffs and members of the California Subclasses have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

## PRAYER FOR RELIEF

114.    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seeks judgment against Defendants as follows:

        a.    For an order certifying the nationwide Classes and the California Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the

representatives of the Classes and California Subclasses and Plaintiffs' attorneys as Class Counsel;

b.  For an order declaring that Defendants' conduct violates the statues reference herein;

c.  For an order finding in favor of Plaintiffs, the nationwide Classes, and the California Subclasses on all counts asserted herein;

d.  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper;

h.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, and expenses;

i.  Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.  For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated:  March 4, 2014                          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   _____*/s/ L. Timothy Fisher*_____
                    L. Timothy Fisher

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  scott@bursor.com
                ltfisher@bursor.com
                apersinger@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (admitted *pro hac vice*)
Joshua Levin-Epstein (admitted *pro hac vice*)
15 Morris Lane
Great Neck, NY  11024
Telephone:  (347) 635-4160
Facsimile:   (516) 234-7800
E-Mail:  spencer@spencersheehan.com
          josh@spencersheehan.com

*Attorneys for Plaintiffs*

1     I, Samuel Alamilla, declare as follows:

2         1.     I am a plaintiff in this action and a citizen of the State of California.  I have personal

3     knowledge of the facts stated herein and, if called as a witness, I could and would testify

4     competently thereto.

5         2.     The complaint filed in this action is filed in the proper place for trial under

6     California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business

7     in this District.

8         3.     While living in California, I purchased BluePrint juice for personal consumer use.  I

9     read the label for BluePrint juice, and purchased it in reliance on the claims that BluePrint was

10    "raw," "unpasteurized," and "cold-pressed."  The representations on the label were substantial

11    factors influencing my decision to purchase BluePrint juice.  I would not have purchased BluePrint

12    juice had I known that it is not, in fact, raw, unpasteurized, or cold-pressed.

13        I declare under the penalty of perjury under the laws of the State of California that the

14    foregoing is true and correct, executed on November __20__, 2013 at Santa Rosa, California.

15

16

17                                          _____

18                                          SAMUEL ALAMILLA

19

20

21

22

23

24

25

26

27

28

1

2

I, Colleen King, declare as follows:

1.  I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.  The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.  While living in California, I purchased BluePrint juice for personal consumer use.  I read the label for BluePrint juice, and purchased it in reliance on the claims that BluePrint was "raw," "unpasteurized," and "cold-pressed."  The representations on the label were substantial factors influencing my decision to purchase BluePrint juice.  I would not have purchased BluePrint juice had I known that it is not, in fact, raw, unpasteurized, or cold-pressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March   1   , 2014 at    Los Angeles   , California.

COLLEEN KING

**EXHIBIT A**

# BURSOR & FISHER

P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

SCOTT A. BURSOR
Tel: 212.989.9113
Fax: 212.989.9163
scott@bursor.com

July 2, 2013

***Via Certified Mail - Return Receipt Requested***

The Hain Celestial Group, Inc.
1111 Marcus Avenue
Lake Success, New York  11042

ZSBPW LLC
135 W 29th St #704
New York, New York  10001

BLUEPRINTWHOLESALE LLC
135 W 29th St #704
New York, New York  10001

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Uniform Commercial Code § 2-607, and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Michael Stark, Oscar Ruiz, Reyna Gillead, and Kenna Braner, and all other persons similarly situated, arising from violations of numerous provisions of New York and California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice concerning the breaches of express and implied warranties described herein pursuant to U.C.C. §§ 2-313, 2-314, and 2-607.

You have participated in the manufacture, marketing, and sale of BluePrint Juice and BluePrint Cleanse (together, "BluePrint").  The label for BluePrint states that it is "raw" and "unpasteurized."  These statements are false and misleading.  In fact, BluePrint products are subjected to a pastuerization process known as high pressure processing ("HPP").

The fundamental principle behind raw foodism, also called rawism, is that plant foods are the most wholesome for the body in their most natural state – uncooked and unprocessed.  But BluePrint is not sold in its most natural state, and it is heavily processed.  BluePrint is subjected to HPP to artificially extend its shelf-life.  HPP is a method of preserving and sterilizing food by processing the product under very high pressure.  The HPP process is a form of pasteurization that inactivates enzymes and microorganisms.  Food that is subjected to HPP cannot be considered "raw" or "unpasteurized."

Mr. Stark, a resident of New York, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  He would not have purchased BluePrint if he had known that the product was not "raw" or "unpasteurized" because it was subjected to HPP.

Mr. Ruiz, a resident of California, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  He would not have purchased BluePrint if he had known that the product was not "raw" and "unpasteurized" because it was subjected to HPP.

Ms. Gillead, a resident of California, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  She would not have purchased BluePrint if she had known that the product was not "raw" and "unpasteurized" because it was subjected to HPP.

Ms. Braner, a resident of California, purchased BluePrint based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw" and "unpasteurized."  She would not have purchased BluePrint if she had known that the product was not "raw" and "unpasteurized" because it was subjected to HPP.

Mr. Stark, Mr. Ruiz, Ms. Gillead, and Ms.  Braner are acting on behalf of a class defined as all persons in the United States who purchased BluePrint (hereafter, the "Class").

Mr. Ruiz, Ms. Gillead, and Ms. Braner are also acting on behalf of a subclass of Class members who purchased BluePrint in the state of California (the "California Sublcass").

To cure the defects described above, we demand that you (1) cease and desist from further sales of BluePrint; (2) issue an immediate recall of BluePrint; and (3) make full restitution to all purchasers of BluePrint of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning product development and production of BluePrint;

2. All communications with the U.S. Department of Agriculture, the U.S. Food and Drug Administration, and the U.S. Environmental Protection Agency concerning the product development, manufacturing, marketing and sales of BluePrint;

3. All documents concerning the advertisement, marketing, or sale of BluePrint; and

4. All communications with customers concerning complaints or comments concerning BluePrint.

BURSOR&FISHER
P.A.

    We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

            Very truly yours,

            L. Timothy Fisher